UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO GONZALEZ,

                Plaintiff,

           v.

NYPD DETECTIVE EMERITO DEJESUS,
NYPD DETECTIVE TARAH BARRETT,
NYPD DETECTIVE SEAN DRAIN,
NYPD OFFICER DOES 1-5,

                Defendants.

ECF CASE

Case No. 15-CV-393 (PAC)

**COMPLAINT**

**JURY TRIAL DEMANDED**

      COMES NOW THE PLAINTIFF, Ricardo Gonzalez, by his attorney, Steven M. Warshawsky, for his complaint against the defendants and alleging as follows:

**NATURE OF THE CASE**

      1.    This is a civil rights action under 42 U.S.C. § 1983 arising from the plaintiff's arrest on September 11, 2014, by officers of the New York City Police Department. These officers subjected the plaintiff to false arrest, false imprisonment, unlawful strip search, and other abuses of police authority, without reasonable suspicion, probable cause, or other legal justification. Because the defendants knowingly and intentionally violated the plaintiff's clearly established rights, they are not entitled to qualified immunity. By this action, the plaintiff is demanding compensatory damages for the harms he has suffered as a result of the defendants' unlawful actions, punitive damages to punish and deter the defendants from engaging in similar unlawful actions in the future, attorney's fees and costs, and all available legal and equitable relief. The plaintiff demands trial by jury.

1

## **PARTIES**

2.  Plaintiff **Ricardo Gonzalez** is an adult United States citizen and currently resides in New York, New York. Mr. Gonzalez was born in 1993. Mr. Gonzales has no prior arrests or convictions.

3.  Defendant **NYPD Detective Emerito DeJesus** (Tax No. 915573) is an employee of the New York City Police Department located at One Police Plaza, New York, New York, 10038. Upon information and belief, at all relevant times, Detective DeJesus has been assigned to the NYPD Narcotics Borough Manhattan South. He personally participated in the unlawful conduct alleged herein. At all relevant times, Detective DeJesus was acting under color of state law and in the scope of his employment with the NYPD. Detective DeJesus is being sued in his individual capacity under 42 U.S.C. § 1983

4.  Defendant **NYPD Detective Tarah Barrett** (Shield No. 2277) is an employee of the New York City Police Department located at One Police Plaza, New York, New York, 10038. Upon information and belief, at all relevant times, Detective Barrett has been assigned to the NYPD Narcotics Borough Manhattan South. She personally participated in the unlawful conduct alleged herein. At all relevant times, Detective Barrett was acting under color of state law and in the scope of her employment with the NYPD. Detective Barrett is being sued in her individual capacity under 42 U.S.C. § 1983.

5.  Defendant **NYPD Detective Sean Drain** (Shield No. 6915) is an employee of the New York City Police Department located at One Police Plaza, New York, New York, 10038. Upon information and belief, at all relevant times, Detective Drain has been assigned to the NYPD Narcotics Borough Manhattan

South. He personally participated in the unlawful conduct alleged herein. At all relevant times, Detective Drain was acting under color of state law and in the scope of his employment with the NYPD. Detective Drain is being sued in his individual capacity under 42 U.S.C. § 1983.

6. Defendant **NYPD Officer Does 1-5** are employees of the New York City Police Department located at One Police Plaza, New York, New York, 10038. Their precinct assignments are unknown. Officer Does 1-5 personally participated in the unlawful conduct alleged herein. At all relevant times, Officer Does 1-5 were acting under color of state law and in the scope of their employment with the NYPD. Officer Does 1-5 are being sued in their individual capacity under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and civil rights laws of the United States.

8. This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

9. There are no administrative exhaustion requirements for bringing the present civil rights action under 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

10. The events in this case took place on September 11, 2014, beginning around 4:30 p.m., on Avenue C between 3rd Street and 4th Street in Manhattan.

11. Mr. Gonzalez was walking from his aunt's apartment on FDR Drive to his grandmother's apartment on Columbia Street. He was walking on the public

sidewalk. He was walking by himself. He was wearing a sweater, sweat pants (with basketball shorts underneath), and sneakers. He was not wearing any "gang" clothing. He was not intoxicated. He was not acting disorderly.

12. Mr. Gonzalez was walking south on Avenue C, outside of the Fine Fare supermarket, when he was accosted by a plain clothes police officer who blocked his path and grabbed him by the sweater. This officer was a hispanic male approximately 35 years old. Upon information and belief, this officer was defendant NYPD Detective Emerito DeJesus.

13. Detective DeJesus asked Mr. Gonzales, "Did you just rob someone?" Mr. Gonzalez was surprised and said to the officer, "You've got to be kidding me." Detective DeJesus then told Mr. Gonzalez that he matched the description for a robbery that just had occurred.

14. Detective DeJesus confiscated Mr. Gonzalez's cell phone and searched his pockets, including pulling down his sweat pants to search his basketball shorts. The only items in Mr. Gonzalez's pockets were his ID and $90 in cash. No drugs, weapons, or other contraband were found.

15. Detective DeJesus handcuffed Mr. Gonzalez behind his back and told him "to wait" but did not respond to Mr. Gonzalez's repeated questions about what was going on and why he was being arrested. Mr. Gonzalez was standing on the sidewalk, in view of any pedestrians and customers going in and out of the supermarket. This was the first time Mr. Gonzalez ever had been arrested, and it was a frightening, humiliating experience.

16. Upon information and belief, Detective DeJesus lied when he told Mr. Gonzalez that he matched the description of a robbery suspect. Mr. Gonzalez had not committed any robbery, either that day or at any other time. Upon

information and belief, Detective DeJesus claimed that Mr. Gonzalez matched the description of a robbery suspect as a pretext to conduct an illegal stop and frisk of Mr. Gonzalez to search him for drugs.

17. There was no reasonable suspicion, probable cause, or other legal justification for Mr. Gonzalez to be stopped, frisked, and arrested by the police.

18. Detective DeJesus used a walkie-talkie to call for back up. A few minutes later, an unmarked dark blue sedan and an unmarked black or dark blue prisoner van arrived on the scene. Several plain clothes police officers, approximately four in number, emerged from the vehicles. These officers were male, mixed white and hispanic, and mixed ages. Upon information and belief, one of these officers was defendant NYPD Detective Sean Drain.

19. The various officers, including Detective DeJesus and Detective Drain, conferred among themselves for a few minutes, then Detective DeJesus approached Mr. Gonzalez, tightened his handcuffs, and escorted him to the back of the prisoner van.

20. Upon information and belief, Detective DeJesus, Detective Drain, and the other officers were conspiring to frame Mr. Gonzalez for a crime he did not commit.

21. At this time, some of the officers brought another person who was in custody towards Mr. Gonzalez. This individual was male, with dark skin, and was approximately 25 years old. He was handcuffed behind his back. Upon information and belief, this person was named Devon B_____ [last name redacted to protect his privacy].

22. Detective DeJesus then motioned to Mr. B_____ and said to Mr. Gonzalez, "That's your cousin. That's your cousin. Right?" Mr. Gonzalez

5

thought Detective DeJesus' behavior was bizarre and denied that this person was his cousin. Mr. Gonzales and Mr. B\_\_\_\_ are not related.

23. Both Mr. Gonzalez and Mr. B\_\_\_\_ were placed inside the prisoner van. The van did not have any windows in the prisoner compartment and the design of the seats prevented Mr. Gonzalez from sitting comfortably.

24. Inside the van, Mr. Gonzalez asked Mr. B\_\_\_\_, "Why are they saying you're my cousin?" Mr. B\_\_\_\_ had no idea. Mr. Gonzalez asked him why he had been stopped, and Mr. B\_\_\_\_ told him that he did not know why he had been stopped but that the officers had found some pot on him.

25. Police records show that the police seized from Mr. B\_\_\_\_ a plastic ziplock bag with 1.563 grams of marijuana (less than 1/16th of an ounce).

26. Mr. Gonzalez was driven in the prisoner van from 4th Street to 8th Street, outside of an NYPD precinct (upon information and belief, the 9th Precinct). At this time, Mr. Gonzalez was removed from the van by defendant NYPD Detective Tarah Barrett. Detective Barrett was in plain clothes. Detective Barrett conducted another pat down search of Mr. Gonzalez, while he was standing in the street next to the van. Two other plain clothes officers, both white and older, also were present. No contraband was found. At this time, Mr. Gonzalez saw his cell phone, ID, and cash being placed into a large yellow envelope. Then he was put back into the van, along with a third person who was in custody.

27. Mr. Gonzalez remained inside the prisoner van for 4-5 hours, while the two officers in charge of the van drove around town, picking up additional prisoners and making several food stops (including Taco Bell, Dunkin Donuts, chinese food, and pizza).

28. While the prisoner van was being driven around, the officers constantly used profanity towards the prisoners and told them, "You guys have no rights" and "This is a police state." The officers intentionally blew cigarette smoke into the back of the van to annoy Mr. Gonzalez, who told the officers he had asthma, and the other prisoners. When other prisoners would protest what was happening to them, the officers would stop the van and tighten their handcuffs as punishment. Mr. Gonzalez was extremely anxious and frightened throughout this experience.

29. Around 8:00 p.m. or 9:00 p.m., the prisoner van arrived at another NYPD precinct (upon information and belief, the 10th Precinct). While Mr. Gonzalez was being escorted into the station house, one of the officers intentionally stepped on the back of his shoes to make him stumble.

30. Inside the station house, all of the prisoners were told to stand in a line and the various officers in the room made jokes and derogatory comments about them. Mr. Gonzalez was called "toothpick" (presumably because he is skinny) and "q-tip" (presumably because he has poofy hair).

31. Approximately 5-10 minutes later, Mr. Gonzalez was instructed to go to a restroom, where he was subjected to a strip search by Detective DeJesus and another officer. They did not explain to Mr. Gonzales why he was being strip searched. The strip search lasted several minutes, during which the officers acted in a rude, joking, and unprofessional manner. No contraband was found.

32. There was no reasonable suspicion, probable cause, or other legal justification for Mr. Gonzalez to be strip searched by the police.

33. After the strip search, Mr. Gonzalez was placed in a holding cell, where he remained until approximately 2:00 a.m. (on September 12, 2014). Then he was transported by prisoner van to central booking in downtown Manhattan.

34. Mr. Gonzalez did not learn the charges against him until he was given his property vouchers on the way to central booking. He saw that he was being charged with criminal sale of marijuana in the fourth degree (P.L. § 221.40).

35. Mr. Gonzalez was shocked and confused. He had not sold any marijuana. He was being accused of a crime he did not commit. First he had been arrested supposedly because he matched the description of a robbery suspect and now he was being charged with selling marijuana. Mr. Gonzalez did not know what was happening to him.

36. Upon information and belief, Mr. Gonzales was being framed, intentionally and maliciously, by Detective DeJesus, Detective Barrett, Detective Drain, and other police officers.

37. Mr. Gonzalez remained in custody at central booking until approximately 6:00 p.m. on September 12, when he was arraigned before a criminal court judge and released on his own recognizance.

38. Mr. Gonzalez spent a total of approximately 27 hours in police custody.

39. On September 12, 2014, Detective Barrett executed a criminal complaint against Mr. Gonzalez charging him with three misdemeanor offenses: Criminal Sale of Marijuana in the Fourth Degree (P.L § 221.40); Criminal Possession of Marijuana in the Fifth Degree (P.L. § 221.10(1)); and Unlawful Possession of Marijuana (P.L § 221.05).

40. There was no probable cause or other legal justification to charge Mr. Gonzalez with any of these crimes.

41. In the complaint, Detective Barrett stated, under oath, that she "observed the defendant hand separately charged defendant Devon B\_\_\_\_ [last

name and arrest number redacted to protect his privacy] an object in exchange for US currency. I recovered a bag of marijuana from separately charged defendant's right front pants pocket. I am informed by Detective Sean Drain, Shield 6915 of Narcotics Borough Manhattan South, that he recovered $90 from the defendant's right front pants pocket." These were knowingly false and perjured statements.

42. Detective Barrett did not see Mr. Gonzalez "hand" Mr. B_____ "an object in exchange for US currency" because these alleged events never happened. This was pure fabrication, part of the officers' conspiracy to frame Mr. Gonzales.

43. Detective Drain did not "recover[] $90 from the defendant's right front pants pocket." Detective Drain was not the officer who arrested Mr. Gonzales; Detective DeJesus did, although Detective Barrett is listed as the arresting officer in the police records. Detective Drain never searched Mr. Gonzales; Detective DeJesus and Detective Barrett did. Nevertheless, Detective Drain actively participated in the conspiracy to frame Mr. Gonzales.

44. Mr. Gonzalez was required to appear in criminal court in connection with these charges on October 9, 2014, and November 5, 2014. Mr. Gonzalez accepted an Adjournment in Contemplation of Dismissal on November 5, 2014, pursuant to which all of the charges against him will be dismissed and sealed.

## COUNT ONE: FALSE ARREST / FALSE IMPRISONMENT

45. Plaintiff repeats and re-alleges Paragraphs 1-44 above.

46. The elements of a claim for false arrest / false imprisonment under Section 1983 are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.

9

47. The defendants intended to, and did, confine Mr. Gonzalez.

48. Mr. Gonzalez was conscious of the confinement.

49. Mr. Gonzalez did not consent to the confinement.

50. The confinement was not otherwise privileged.

51. There was no probable cause, arguable probable cause, or other legal justification for Mr. Gonzalez's arrest and imprisonment by the defendants.

52. The defendants are not entitled to qualified immunity.

53. The defendants' actions violated Mr. Gonzalez's clearly established rights under the Fourth Amendment.

54. It was not objectively reasonable for the defendants to believe that their actions did not violate Mr. Gonzalez's rights under the Fourth Amendment.

55. The defendants acted with intentional, knowing, callous, and/or reckless indifference to Mr. Gonzalez's rights under the Fourth Amendment.

56. As a result of the defendants' unconstitutional conduct, Mr. Gonzalez suffered loss of liberty, insult and embarrassment, physical pain and suffering, emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

57. Mr. Gonzalez is entitled to an award of punitive damages to punish the defendants for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT TWO: UNLAWFUL STRIP SEARCH

58. Plaintiff repeats and re-alleges Paragraphs 1-57 above.

59. The Fourth Amendment prohibits police officers from performing a suspicionless strip search of a person arrested for a misdemeanor.

60. As alleged above, Mr. Gonzalez was strip searched by Detective DeJesus and another officer.

61. There was no reasonable suspicion or other legal justification for Mr. Gonzalez to be strip searched by the defendants.

62. The defendants violated Mr. Gonzalez's clearly established rights under the Fourth Amendment.

63. It was not objectively reasonable for the defendants to believe that their actions did not violate Mr. Gonzalez's rights.

64. The defendants acted with intentional, knowing, callous, and/or reckless indifference to Mr. Gonzalez's rights.

65. As a result of the defendants' unconstitutional conduct, Mr. Gonzalez suffered loss of liberty, insult and embarrassment, physical pain and suffering, emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

66. Mr. Gonzalez is entitled to an award of punitive damages to punish the defendants for their unconstitutional conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, plaintiff Ricardo Gonzalez hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

**PRAYER FOR RELIEF**

WHEREFORE the Plaintiff demands judgment against the Defendants for:

    A.    Compensatory damages in an amount no less than $250,000;

    B.    Punitive damages in an amount no less than $250,000;

    C.    Pre-judgment and post-judgment interest;

    D.    Attorney's fees, costs, and disbursements; and

    E.    All other relief that the Plaintiff may be entitled to under law, or as justice may require.

Dated:    January 20, 2015
             New York, NY

Respectfully submitted,

*Steven M. Warshawsky*

By: _____
STEVEN M. WARSHAWSKY (SW 5431)
Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY  10118
Tel:  (212) 601-1980
Fax:  (212) 601-2610
Email:  smw@warshawskylawfirm.com
Website:  www.warshawskylawfirm.com